ORDER
DWIGHT W. BIRDWELL, Chief Justice.
Pat Ragsdale (“Plaintiff”) states that he intends to run for the office of Principal Chief of the Cherokee Nation in the 1999 general election. Plaintiff seeks declaratory relief against the Cherokee Nation Election Commission (“Defendant”) regarding two issues found in the Cherokee Nation election laws which he alleges affect him.
The first issue concerns the so-called permanent residence requirement found in Article VI, § 2 of the Cherokee Constitution, and the Code provisions enacted to implement it. With the Court’s holdings in Franklin McLain v. Cherokee Nation Election Commission, JAT Case No. 98-13-K [“McLain”], and Bobby Leach v. Tribal Election Commission of the Cherokee Nation JAT Case No. 94-1 [“Leach”], the issue regarding the so-called permanent residence requirement is moot. There is no permanent residence requirement for a candidate for Principal Chief of the Cherokee Nation,[1] and, by its own terms, the failed permanent residence requirement cannot be validated for the 1999 general election under Cherokee law[2].
The second issue concerns 26 CNCA § 43(A), which provides:

A. Contribution Amount Limits. No adult person, corporation or other legal entity shall contribute more than five hundred dollars ($500) in cash to any 
*44
one candidate during an election period,, or more than five-thousand ($5, 000) in the aggregate, including cash contributions, for any one office during an election period.

The Plaintiff raises one of the ambiguities found in the quoted statute caused by the “$5,000 in cash to any one candidate” limitation, versus the “$5,000 in the aggregate, including cash contributions, for any one office” limitation, [emphasis added]. The Plaintiff contends that § 43(A) should be construed to mean that there is a $500.00 limit on cash contributions, and a $5,000.00 aggregate limit on total contributions, including cash, from any person to any candidate in any election period.
The Plaintiff frames this issue as follows; May a candidate for Principal Chief accept contributions up to and including $5, 000.00 from any person for an election period?
In its Answer, the Defendant states: Plaintiffs second question presented deals with campaign contributions. Plaintiffs contention is correct; there is a $500 limit on cash contributions and an aggregate limit of $5, 000 total contributions from any person to any candidate in any election period.
HOLDING
We hold that the permanent residence requirement issue is moot; there is no permanent residence requirement for a candidate for Principal Chief of the Cherokee Nation,[3] and, by its own terms, the failed permanent residence requirement cannot be validated for the 1999 general election under Cherokee law[4].
We further hold, that the correct interpretation of 26 CNCA § 43(A) is as follows:
A. Contribution Amount Limits. No adult person, corporation or other legal entity shall contribute more than five hundred dollars ($500) in cash to any one candidate during an election period, or more than five-thousand ($5,000) in the aggregate, including cash contributions, for any one candidate seeking office during an election period.
IT IS SO ORDERED.
RALPH F. KEEN, Justice of the Cherokee Nation (Case assigned pursuant to Rule 3a).
CLARIFYING ORDER
Jan. 29, 1999
An Order was entered in the above-captioned cause on December 28th, 1998. In that Order, the Court held, among other things, that the correct construction of 26 CNCA § 43(A) is as follows:
No adult person, corporation or other legal entity shall contribute more than five hundred dollars ($500) in cash to any one candidate during an election period, or more than five-thousand ($5,000) in the aggregate, including cash contributions, for any one candidate seeking office during an election period.
On January 18th, 1999, the Plaintiff filed a “Request For Clarification” of the Court’s Order. Essentially, the Plaintiff is asking the Court to construe the word “cash”, as used in 26 CNCA § 43(A), very narrowly to mean only “currency of the United States”.
*45 The Defendant filed its reply to Plaintiffs Request For Clarification on January 25, 1999.
ISSUE
The issue raised in Plaintiffs Request For Clarification is as follows. What is the meaning of the word “cash” as used in 26 CNCA § 43(A)?
DISCUSSION
If the Court were to accept the Plaintiffs very narrow definition of cash, such things as personal or business checks, Cashier’s checks, money orders, etc. would not be considered to be “cash” as used in 26 CNCA § 43(A).
The general rule in interpreting the intent of the Council of the Cherokee Nation (“Council”), as the intent is expressed in the Cherokee Code, is that the words used by the Council in the Code are presumed to have been used in their plain or ordinary meaning, within the context in which they were used, unless it is clear that the words have acquired a technical or special legal meaning [1].
The Council did not provide a special or technical definition to the word “cash” in Title 26[2]. Therefore, it is reasonable to presume that the Council intended the meaning of the word “cash” to be the same as its ordinary and plain meaning. In Black’s Law Dictionary, p. 216 (6th Ed. 1990), the word “cash” is defined as,
Money or the equivalent; usually ready money. Currency and coins, negotiable checks and balances in bank accounts. That which circulates as money.
In Webster’s New Collegiate Dictionary €>1980, p. 170, one of the definitions of “cash”, appropriate hereto, is.

1: ready money, 2: money or its equivalent paid promptly after purchasing.

The Council could have chosen to use the word “currency”[3], or the term “legal tender[4]” instead of “cash”, but it did not. In reality, the narrow definition of “cash”, as urged by the Plaintiff, would allow § 43(A) to be made an absurdity. For example, under the Plaintiffs defini *46 tion. a contributor could give $500.00 in currency (such as five $100 Federal reserve notes) to a candidate, and at the same time give the candidate a Cashier’s check payable to the candidate in the amount of $4,500.00, and the contributor would be within Cherokee law. If the Council would have intended such a result, the Council would not have stated the limits in § 43(A) as five hundred dollars ($500) in cash . .., ... five-thousand dollars ($5,000) in the aggregate ... It is clear from the context of the language of § 43(A) that the Council intended contributions to candidates to be placed in two categories: cash and non-cash.
Accordingly, the Court finds that the Council intended “cash” to be MONEY[5] OR THE EQUIVALENT. Therefore, while “cash” includes currency and legal tender, it also includes much more. A non-exclusive, non-exhaustive list of other items included within the definition of “cash” [within the meaning of § 43(A)] would be personal checks, business checks, endorsed third party checks, Cashier’s checks, money orders, notes, drafts, certificates of deposit, and any other items falling under the definition of negotiable instruments[6], bonds, all traded securities, deposits into bank or other accounts, the right to make a withdrawal from bank or other accounts[7], non-recourse loans, annuities and/or assignments of annuities, assignments of rights to income from any source, etc., etc.
A “non-cash” (sometimes called an “in kind”) contribution is anything that is not a cash contribution. A listing of all possible non-cash type contributions is impossible. However, the defendant correctly listed a few examples of non-cash contributions as being
equipment, plane tickets, direct payment of expenditures, loans of vehicles and benefit dinners. ANY OTHERWISE NON-CASH CONTRIBUTION WHICH IS SUBSEQUENTLY CONVERTED INTO CASH, MUST BE TREATED AS “CASH” FOR PURPOSES OF § 43(A). For example, if a party contributed an airline ticket valued at $250.00, and the candidate used the ticket, then the contribution would be considered a $250.00 non-cash contribution. If, however, the candidate did not use the ticket, but instead sold it for cash, or obtained a “refund” in cash from the airline, then the ticket would be treated as a cash contribution to the extent of the amount of cash received from the sale, or refund, of the ticket.
HOLDING
THEREFORE, THE COURT HEREBY FINDS AND HOLDS that “cash”, as used in 26 CNCA § 43(A), means MONEY OR THE EQUIVALENT.
IT IS SO ORDERED.

. Id.

. As noted in McLain, the Cherokee Constitution prohibits ex post facto laws. Cherokee Const, art. V, § 8, and 25 U.S.C. g 1302(9) incorporated through Cherokee Const, art. 11.

. McLain, and Leach.

. As noted in McLain, the Cherokee Constitution prohibits ex post facto laws. Cherokee Consl. art. V, § 8, and 25 U.S.C. g 1302(9) incorporated through Cherokee Const, art. II.

. Courts should be slow to import any other than their commonly understood meaning to terms employed in the enactment of o statute, and it is the policy of the courts to avoid giving statutory phraseology a new, curious or peculiar, distorted hidden, unusual unnatural, strained enforced, artificial, refitted, metaphysical, or subtle meaning. To the contrary, it is a general rule of statutory construction that words of a statute will be interpreted in their ordinary acceptation and significance, and the meaning commonly attributed to them The rule is that such words are to be given their natural, received, popular, everyday, approved, and recognized meaning. The intention of the legislature to use statutory phraseology in such manner has been presumed. The rule in favor of the construction of statutory terminology in accordance with the commonly accepted meaning prevails where the words have not acquired a technical or special legal meaning, and where them is no reason for a contrary construction, that is, where a different meaning is not apparent or obvious or definitely indicated or required by the context. Rather than using terms in their everyday sense, the law uses familiar legal expressions in their familiar legal sense. 73 Am Jur 2d, Statutes, § 206. [citations omitted].

. Legislative Act No. 7-97.

. Coined money and such banknotes or other paper money as are authorized by law and do in fact circulate from hand to hand as a medium exchange. Black’s Law Dictionary. p. 382 (6th Ed. 1990).

. United States coins and currency (including Federal reserve notes and circulating notes of Federal reserve banks and national banks) are legal tender for all debts, public charges, taxes, and dues. Foreign gold or silver coins are not legal tender for debts. 31 USCA § 5103.

. Money is something generally accepted as a medium of exchange, a measure of value, or a means of payment. Webster’s New Collegiate üictionaiy, ©1980, p. 736.

. As defined Uniform Commercial Code, Article 3.

.Prudence dictates that great caution be taken by all candidates in regards to bank accounts.